IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIE BOTTOMS, | No. 2:13-cv-1322-CMK |
|     Plaintiff, | |
|   vs. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
|     Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-motion for summary judgment (Doc. 16). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

1

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on May 5, 2010 (Title II application) and May 7, 2010 (Title XVI application), alleging an onset of disability on April 1, 2010, due to disabilities including learning disability and post traumatic stress disorder. (Certified administrative record ("CAR") 61-62, 66-67, 110-17, 128-33). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on January 4, 2012, before Administrative Law Judge ("ALJ") Arthur S. Cahn. In a January 31, 2012, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

>    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

|   |   |   |
|---|---|---|
| 1. | | The claimant meets the insured status requirements of the Social Security Act through June 30, 2011. |
| 2. | | The claimant has not engaged in substantial gainful activity since April 1, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*). |
| 3. | | The claimant has the following severe impairments: borderline intellectual functioning and amphetamine dependence in full remission (20 CFR 404.1520(c) and 416.920(c)). |
| 4. | | The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). |
| 5. | | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple, repetitive tasks consistent with unskilled work. |
| 6. | | The claimant is capable of performing past relevant work as a cashier.  This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). |
| 7. | | The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)). |

(CAR 13-28).  After the Appeals Council declined review on April 30, 2013, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

---

process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

Plaintiff argues the ALJ erred in two ways:  (1) the ALJ failed to properly assess plaintiff's residual functional capacity and failed to utilize the services of a vocational expert; and (2) the ALJ failed to properly evaluate both plaintiff's testimony and third party witness statements without articulating legitimate reasons for so doing.

####    A.    RESIDUAL FUNCTIONAL CAPACITY

Plaintiff first argues the ALJ erred in assessing her residual functional capacity (RFC).  In so doing, she contends the ALJ rejected opinion evidence, even those opinions he purported to accepted.  He also rejected plaintiff's testimony as well as her third party statements. He failed to include all of the limitations the doctors opined, specifically, plaintiff's abilities relating to concentration, persistence, or pace; her ability to get along with others; and her ability to accept instruction or criticism from supervisors. Therefore, she contends, if these limitations had been included in the RFC, a vocational expert would have been necessary to testify at the

hearing to determine whether she could in fact perform her past relevant work or any other job.

### 1. MEDICAL OPINIONS

Plaintiff's first contention relates to the ALJ's treatment of the medical opinions in the record. There were four different examining physicians, who each performed an examination as to plaintiff's mental abilities. Dr. Viesti first examined plaintiff in 2005 at the request of the Department of Rehabilitation. Then, also in 2005, Dr. Kemp examined plaintiff, again at the request of the Department of Rehabilitation. After filing her application, the commissioner then had plaintiff examined by Dr. Eargle in 2010. Finally, plaintiff's attorney had her examined by Dr. Boyle in 2011. The only other medical opinion in the record is from Disability Determination Service reviewing medical consultant/psychological consultant Jaine Foster-Valdez. Plaintiff argues that the ALJ erred in rejecting the opinion evidence of the examining psychologists.

a. Dr. Viesti

Dr. Viesti examined plaintiff on July 18, 2005. He performed several tests, including the Wechsler Abbreviated Scale of Intelligence (WASI), the Stroop Color-Word Test; the Memory Assessment Scales (MAS); and Trails A and B. She tested below average on each of the tests. The specific findings included:

> 1. Impaired ability to attend to, and concentrate upon information which is presented in written or oral form. Hence, she may be easily distracted by activities around her or by her own thoughts.
> 2. Impaired level of ability in visual short-term memory may make it difficult to concentrate on non-verbal information such as diagrams or drawings.
> 3. Difficulty in retaining new information which is presented in oral or written form. At this level of performance, she may experience substantial difficulties in adjusting to normal everyday activities.

(CAR 204).

Dr. Viesti determined the most reasonable diagnosis to be a learning disorder not otherwise specified.

After summarizing Dr. Viesti's report, the ALJ stated:

> Dr. Viesti's specific findings were that the claimant has impaired ability to attend to, and concentrate upon information, which is presented in written or oral form. Hence, she may be easily distracted by activities around her or by her own thoughts. She has an impaired level of ability in visual short-term memory, which may make it difficult to concentrate on non-verbal information such as diagrams or drawings. She has difficulty in retaining new information, which is presented in oral or written form. At this level of performance, she may experience substantial difficulties in adjusting to normal everyday activities. Dr. Viesti diagnosed the claimant with learning disorder, not otherwise specified (Ex 1F/14-16). The undersigned assigns some weight to the findings in this case, but finds that the opinion of the consultative examiner, discussed below, is more consistent with other substantial evidence in the record. (See 20 CFR 404.1527(d)).

(CAR 20).

        b.  Dr. Kemp

Dr. Kemp examined plaintiff on October 15, 2005. She administered the following tests: WAIS-III; WRAT 3; Clinical Interview and Mental Status. The mental status examination showed plaintiff to have good social skills and eye contact; rapid speech with scattered thinking; mild tangential thinking; affect was full range; she was oriented to person, place and time; concentration was in the low range; intelligence was in the borderline range; insight was fair; and judgment was good. The WAIS-III showed plaintiff's cognitive ability in the borderline range; her verbal reasoning abilities were in the low average range; her nonverbal reasoning abilities were in the borderline range; her working memory was in the below average to average range; and her abilities on the Processing Speed Index were all in the far below average to below average range. The WRAT3 test did not indicate a learning disability. Dr. Kemp diagnosed plaintiff with Attention-Deficit/Hyperactivity Disorder NOS; Amphetamine Abuse, sustained full remission; and Borderline Intellectual Functioning. Dr. Kemp opined plaintiff has basic skills, mild indication of difficulty with pace on routine tasks, but that plaintiff had realistic vocational goals of working at Wal-Mart and getting some education to be a teachers aid to work with handicapped children. Dr. Kemp also opined that plaintiff's lack of life skills may be interfering with her holding a job, and that she may need some support and

information on how to maintain a job. (CAR 191-201).

Again after summarizing Dr. Kemp's report, the ALJ stated:

> Dr. Kemp diagnosed the claimant with attention deficit/hyperactivity disorder, not otherwise specified, amphetamine abuse in sustained full remission, and borderline intellectual functioning. She opined the claimant's cognitive abilities are in the borderline to low average range. There is no significant difference between her Verbal and her Performance abilities. She stated that this usually indicated that there is no preferential learning mode, i.e. verbal versus hands on. However, the claimant was very clear she learns best by being shown. Dr. Kemp opined this is probably because her cognitive level is low (1F/2-12). The undersigned assigns some weight to the findings in this case, but finds that the opinion of the consultative examiner, discussed below, is more informative regarding the claimant's functional ability as they related to work and more consistent with other substantial evidence in the record. (See 20 CFR 404.1527(d)).

(CAR 21).

c.  Dr. Eargle

Dr. Eargle examined plaintiff on July 31, 2010, on referral from the Commissioner. Dr. Eargle reviewed both Dr. Kept and Dr. Viesti's reports. Dr. Eargle noted plaintiff reported "It's not that I'm unable to work, I have a learning disorder that makes it very hard for me in school." Mental status examination showed plaintiff appropriately dressed, good eye contact, no unusual behaviors; plaintiff was fidgety, but cooperative and relatively socially appropriate; her thoughts were scattered and somewhat tangential; her thought content was relevant; her affect was variable and ranged from appropriate to depressed; she was alert and fully oriented; her immediate memory or attention was within normal limits; her recent memory was mildly impaired; her remote memory appeared to be good; plaintiff was able to perform simple addition, subtraction and multiplication but not division; her concentration was mildly impaired; her insight and judgment appeared to be good. Dr. Eargle diagnosed plaintiff with anxiety disorder NOS, amphetamine dependence in sustained full remission. Dr. Eargle noted plaintiff did not endorse symptoms consistent with posttraumatic stress disorder or a major depressive episode, but did appear to be suffering from moderate symptoms of anxiety. Dr.

1  Eargle opined plaintiff's academic difficulties and problems learning new information are related
2  to her overall borderline intellectual functioning, not any specific learning disability.  She also
3  opined plaintiff's anxiety symptoms would be treatable with appropriate intervention.  Dr. Eargle
4  opined plaintiff has the ability to perform simple and repetitive tasks; that plaintiff "might have
5  mild difficulty interacting with supervisors, coworkers and the public in an appropriate fashion";
6  plaintiff's memory and concentration were mildly impaired, and she would have difficulty
7  learning new information and instructions without multiple repetitions and cues and prompts;
8  plaintiff has the ability to respond appropriately to typical work situations; she has the ability to
9  maintain a normal work schedule; and based on plaintiff's report that she is hypersensitive to
10 criticism, "[i]t is possible that she would experience a mild exacerbation in anxiety symptoms
11 when faced with the normal corrective statements that occur in the workplace." (CAR 213-19).

As to Dr. Eargle, the ALJ stated:

> Dr. Eargle diagnosed the claimant with anxiety disorder, not otherwise specified, amphetamine dependence in full remission, and borderline intellectual functioning.  As discussed above, the undersigned finds anxiety disorder to be a nonsevere impairment.  She assessed the claimant's GAF score as 65, which again indicates moderate symptoms as discussed above.  Functionally, Dr. Eargle opined the claimant has the ability to perform simple and repetitive tasks  Tasks of moderate detail and complexity would likely exceed her capabilities.  The claimant might have mild difficulty interacting with supervisors, coworkers and the public in an appropriate fashion.  Her thoughts were somewhat scattered and disjointed throughout the evaluation.  She had difficulty focusing her train of thought and this could become frustrating to others who are required to regularly interact with her.  The claimant's memory and concentration were mildly impaired and this is consistent with performance on past psychological evaluations.  She would have difficulty learning new information and instructions without multiple repetitions, cues, and prompts.  The claimant has the ability to respond appropriately to typical work situations as well as situations involving some urgency or safety considerations.  The claimant is able to maintain a normal work schedule without interruptions from a psychiatric condition (Ex. 3F).  This opinion is well supported by the medical evidence and consistent with other substantial evidence in the record.  Accordingly, the undersigned assigns great weight to this opinion.

(CAR 22).

d. Dr. Boyle

Dr. Boyle performed a psychological evaluation of plaintiff on November 18, 2011. Dr. Boyle performed the Minnesota Multiphasic Personality Inventory (MMPI-2) and Millon Clinical Multiaxial Inventory (MCMI-III). Dr. Boyle reviewed both Dr. Kemp and Dr. Viesti's reports. Dr. Boyle observed plaintiff was oriented to person, place, time and situation; her speech was spontaneous and clear but rather rapid at times and somewhat tangential; plaintiff maintained good eye contact; her range of affect was adequate; her affect was appropriate to content; her mood was dysphoric; her intellectual level was thought to be in the low average range; short-term and long-term memory appeared intact; her general fund of knowledge seemed adequate; but she was unable to successfully complete tasks requiring attention/concentration and she had difficulty focusing; and her insight and judgment were considered to be fair. Upon administering the MMPI-2, Dr. Boyle noted

> Regarding validity, Ms. Bottoms' validity scores beg the question of whether or not she has given a valid profile. Her profile may be the result of some indiscriminate responding. She may have exaggerated her difficulties, or Ms. Bottoms may be experiencing a significant level of pathology. Even though there is a question about the validity of Ms. Bottoms' test results, I have chosen to interpret her MMPI-2 findings based on the hypothesis that her current level of psychological distress was responsible for the elevations on some of her validity scales. (AR 270-71).

Dr. Boyle found plaintiff's MMPI-2 profile indicative of a personality disorder, including passive-aggressive or antisocial traits. As to the MCMI-III, Dr. Boyle found plaintiff gave a valid profile. He indicates plaintiff displayed four different personality disorders: Dependent, Depressive, Antisocial, and Masochistic. She scored in the elevated range on the borderline scale, which indicates instability and unpredictability of mood and behavior. She scored in the strongly significant range on the Dysthymia scale, which suggests chronic, low-grade depression. She scored in the significantly elevated range on the Major Depression scale, which indicates acute and severe depression. Dr. Boyle diagnosed plaintiff with Major Depressive Disorder, recurrent, severe without psychotic features; Dysthymia Disorder; Attention-

Deficit/Hyperactivity Disorder NOS; History of Amphetamine Dependence; History of Cannabis Dependence; History of Learning Disorder NOS; Personality Disorder NOS; and Borderline Intellectual Function, by history. Dr. Boyle opined plaintiff's psychological difficulties would cause her significant difficulties in a work setting, she would be preoccupied and distracted, and have a hard time getting along effectively with co-workers and general public. (CAR 266-74).

After a review of Dr. Boyle's report, the ALJ found

> There is no evidence in the medical evidence of record to support the majority of Dr. Boyle's diagnoses. He diagnoses ADHD, learning disorder, and borderline intellectual functioning without having performed any applicable diagnostic tests like the tests administered by the three other psychological examiners. He does not say how he supports these diagnosis. The tests he did perform assist in diagnosing the other impairments he identifies. The claimant has had no treatment for any psychological disorder save for a remote suicide attempt in her teens by overdosing on Motrin Moreover, she worked after than for many years and has had no relapse or medically documented mental impairment. Dr. Boyle had to assume an unproven hypotheses about the results of the MMPI-2 in order to draw any conclusions about the results. In evaluating his diagnosis of major depressive disorder, recurrent, severe without psychotic features, dysthymic disorder, and personality disorder, not otherwise specified, dependent, depressive, antisocial and masochistic traits, Dr. Boyle included many general textbook like statements about how these disorder "may" affect the claimant but which in actuality have no support in the medical records. Thus, the undersigned assigns little support to Dr. Boyle's findings and opinion.

(CAR 25).

e. Discussion

Plaintiff argues the ALJ erred in his treatment of the medical opinions. She contends that the ALJ rejected the opinion evidence of Drs. Viesti, Kemp, and Boyle, and failed to include all of the limitations set forth by Dr. Eargle.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual,

than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

1          Here, there are four separate examining physicians who opined as to varying
2   diagnoses and limitations.  As they are contradictory opinions, the ALJ was required to resolve
3   that conflict, which he did providing his specific reasons for so doing.  The undersigned finds no
4   error in the ALJ's treatment of the opinions in the record.
5          As to the specific limitations the ALJ incorporated into plaintiff's RFC, plaintiff
6   argues the ALJ erred in not including all of the limitations set forth by the consulting
7   psychologist.  As set forth above, Dr. Eargle found plaintiff capable of performing simple and
8   repetitive tasks.  She indicated plaintiff "might" have mild difficulties interacting with others,
9   had mild impairment as to memory and concentration, and that it is "possible" that being
10  corrected would cause mild exacerbation of her anxiety.  In forming plaintiff's RFC, the ALJ
11  accepted the specific limitation Dr. Eargle found, that plaintiff would be limited to simple and
12  repetitive tasks.  As to the other possible difficulties plaintiff may experience, the ALJ turned to
13  the non-examining state agency reviewer for clarification.
14         The ALJ set forth the consultant's review of the medical evidence as well as her
15  Psychiatric Review Technique and Mental Residual Functional Capacity Assessment.  The ALJ
16  found Ms. Foster-Valdez's opinion "consistent with substantial evidence in the case and [he]
17  recognizes the reviewing physician is an expert in Social Security disability evaluation and the
18  evidentiary requirements of the program and thus assigns this opinion significant weight (See 20
19  CFR 404.1527)."  (CAR 23).  Ms. Foster-Valdez specifically found plaintiff capable of
20  understanding, remembering and carrying out simple instructions; making simple work related
21  decisions; maintaining a simple schedule and complete simple tasks on a consistent basis; work
22  with and around others, but is sensitive to criticism from supervisors; and able to deal with
23  changes in a routine work setting.  (CAR 240).
24         Plaintiff argues this case is similar to other cases out of this court, including Feltis
25  v. Astrue, 2:11-cv-0723-KJN, wherein Judge Newman found an RFC for simple, repetitive work
26  did not encompass the medical findings of moderate mental limitations in, among other things,

concentration, persistence, or pace. Judge Newman found that case distinguishable from the Ninth Circuit case of Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008), and more akin to the unpublished Ninth Circuit case of Brink v. Commissioner of the Social Security Administration, 343 Fed. Appx. 211 (9th Cir. 2009). Contrary to plaintiff's argument, the undersigned finds the opposite in this case; that this case is more akin to Stubbs-Danielson, and distinguishable from Brink.

First, plaintiff herein was assessed with only a mild limitation in the area of memory and concentration, as opposed to the moderate limitations assessed in both Brink and Feltis. Also, in Feltis, the record contained concrete medical opinions indicating moderate limitations as to the claimant's ability to maintain persistence and pace, or as Judge Newman interpreted, endurance and pace. Thus, Judge Newman found an RFC limiting the claimant to simple repetitive tasks did not encompass the moderate limitations the medical opinions specifically found the claimant would have in maintaining pace and endurance over an eight-hour workday. No such limitation was assessed in this case.

Instead, here Dr. Eargle, who's opinion the ALJ accepted, found plaintiff capable of maintaining a normal work week, and that she had only a mild impairment with her memory and concentration, and may have mild difficulty getting along with others. The ALJ's limitation to simple, repetitive tasks does not conflict with a possibility that plaintiff may have some mild difficulties, especially where there is a medical source opinion that she is capable of performing simple and repetitive tasks, and is capable of maintaining a normal work schedule. The ALJ's decision not to include such possible mild limitations is within the ALJ's discretionary judgment and is supported by the record.

As stated above, contrary to plaintiff's argument, this case is more on par with Stubbs-Danielson v. Astrue, wherein the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." 539 F.3d at 1174.

In <u>Stubbs-Danielson</u>, there was no concrete medical opinion as to any significant limitation on the claimant's ability to maintain concentration, persistence or pace. Based on the lack of concrete opinion, the Ninth Circuit determined the ALJ did not err in finding an RFC limited to simple and repetitive tasks was sufficient to incorporate any mental deficiencies. This is opposed to a situation where there is an affirmative medical opinion in the record indicating more significant restrictions, such that a claimant has moderate difficulty with concentration, persistence or pace. See <u>Brink</u>, 343 Fed. Appx. at 212. Judge Newman determined <u>Feltis</u> was akin to <u>Brink</u>, where there was arguably medical evidence and opinion that the claimant had moderate difficulties with concentration, persistence and pace. Again, there is no such concrete opinion of moderate limitations in this case. At best, there is a speculative possibility of some mild difficulties plaintiff may have, which does not rise to the level necessary to be included in the RFC, especially where the ALJ limited plaintiff's abilities to simple and repetitive tasks.

As to plaintiff's argument that the ALJ erred in not including his step three finding that she had moderate difficulties in concentration, persistence, or pace, in the RFC, the undersigned agrees with the defendant that limitations identified in step three are "not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . ." SSR 96-8p, 1996 WL 374184, *4 (July 2, 1996). In fact, the Ninth Circuit rejected a similar argument in <u>Stubbs-Danielson</u>. <u>See</u> 539 F.3d at 1174. This is especially true where, as here, the ALJ relied on the concrete restrictions as opined by the medical professionals.

The undersigned finds no error in the ALJ's RFC assessment. The RFC is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); <u>see also</u> <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). The undersigned finds the ALJ' assessment here to be adequate and supported by the record.

Plaintiff further argues that the ALJ erred in his determination that plaintiff can perform her past relevant work, or in the alternative, that plaintiff is not disabled after applying

section 204.00 in the Medical-Vocational Guidelines (the Grids). This argument is based on the errors alleged above, that the RFC failed to incorporate all of her mental limitations. However, as the undersigned finds no error in the RFC, it follows that there is no error in the ALJ's determination of not disabled, whether by applying the Grids or by finding her capable of performing her past relevant work.

### B. CREDIBILITY

Next, plaintiff contends that the ALJ's credibility determination was erroneous. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

15

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

As to plaintiff's credibility, after reviewing the plaintiff's daily activities, testimony, college transcripts, the medical records, and third party statements, the ALJ stated:

> Thus, having considered all of the objective evidence, subjective complaints, opinion evidence, and the record as a whole, the undersigned finds the claimant's allegations and the Third Party's statements are generally not credible.  The claimant reported to Dr. Boyle that she is embarrassed that she has to live with her parents and hopes she would be able to live independently one day.  She testified that she attends Shasta Community College with the employment goal of working in an office.  While failing some courses, she has successfully passed others.  She has a good work history despite her reports that she is unable to keep a job due to the fact that she has difficulty comprehending what her bosses are instructing her to do (Ex. 3E).  Dr. Eargle's medical opinion sufficiently considers the claimant's diagnoses and supports that despite the claimant's limitations she can perform simple repetitive tasks.  Thus, the undersigned finds the claimant has the residual functional capacity to perform a wide range of unskilled work.

(CAR 26).

1         Plaintiff contends the ALJ merely noted her statements are generally not credible, his observations did not establish she was not credible, and his determination was contrary to the evidence. She argues her statements were consistent throughout the proceedings, were supported by the medical findings, and with no evidence of malingering, should have been credited. Thus, her position is that the ALJ failed to provide legitimate or convincing reasons for rejecting plaintiff's testimony.

        Contrary to plaintiff's argument, the ALJ provided several reasons for finding discrediting plaintiff, and the reasons were more than simply observations. The ALJ reviewed plaintiff's daily activities, noting her ability to pass several college courses, her wide-ranging daily activities, and good work history. He also noted several instances of inconsistent statements, both to the consulting psychologists and in her reports and testimony. He further took notice of her lack of medical care. Finally, he found that the objective medical evidence, including Dr. Eargle's medical opinion, showed she was capable of performing simple repetitive tasks. The undersigned finds these reasons sufficiently clear and convincing, and supported by the record.

        Finally, plaintiff argues the ALJ erred in summarily rejecting her mother's statements. However, contrary to plaintiff's argument, the ALJ did specifically address Ms. Button's statements. The ALJ specifically stated:

> Gerri Bottoms, the claimant's mother, prepared a Third Party Statement dated July 2010. Her statements reiterate the statements from the claimant and support the claimant's allegations (Ex. 4E/13-20). While Mrs. Bottoms' statements are sincere, they reflect her opinion, and do not support the extent of limitation alleged by the claimant. The statements are also inconsistent with the medical evidence and medical opinion in this case. Thus, the undersigned assigns this opinion little weight.

(CAR 25).

        In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay

17

testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ did not ignore Mrs. Bottom's statements. Rather, he summarized the statements, and provided germane reasons for rejecting them. The undersigned finds no reversible error.

### IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 15) is denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 16) is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: October 30, 2014

                                                **CRAIG M. KELLISON**
                                                UNITED STATES MAGISTRATE JUDGE